## Cohen, Appellant, *v.* Keller.

*Contracts—Promissory notes—Collateral security for notes—Unextinguished debt—Reassignment of security—Equity.*

One who gives notes with collateral security for the payment of a fixed sum from the profits of a certain corporation, and successfully defends a suit on such notes on the ground that the corporation had received no profits but had been forced to liquidate and dissolve, cannot subsequently by bill in equity obtain a reassignment of such collateral security, without payment of the notes.

Argued Jan. 8, 1914. Appeal, No. 232, Jan. T., 1913, by plaintiff, from decree of C. P. No. 4, Philadelphia Co., Dec. T., 1910, No. 908, in Equity, refusing to order reassignment of insurance policy in case of Andrew J. Cohen v. Joseph S. Keller. Before Brown, Mestrezat, Potter, Stewart and Moschzisker, JJ. Affirmed.

Bill in equity to compel reassignment of insurance policy given as collateral security. Before Carr, J.

The court dismissed the bill. Plaintiff appealed.

*Error assigned,* among others, was the decree of the court.

*Andrew Wright Crawford,* with him *Frederick M. Leonard,* for appellant.

*Frank P. Prichard,* with him *William C. Jones* and *John Stokes Adams,* for appellee.

Opinion by Mr. Justice Stewart, February 9, 1914:

The appeal is from a decree dismissing a bill wherein the relief sought by the plaintiff was the reassignment of a certain policy of life insurance which he had pledged as collateral security in a transaction based on the following written undertaking by the party to whom

the pledge had been made: "The writer, J. S. Keller, will, in consideration that you transfer to me twenty per cent. of your one-half interest in umbrella tubing and receipt of like amount from Mr. Seymour's interest, obligate myself to provide all the necessary cash funds to build one complete set of machines to make the above mentioned tubing. I will agree to advance to A. J. Cohen the sum of Fifteen Hundred Dollars ($1,500) same to be secured by Mr. Cohen transferring me his present life insurance policy as collateral. The amount advanced to be paid back to me from the immediate proceeds of profits derived from the sale of umbrella tubes made. The above is respectfully submitted for your convenient consideration. J. S. Keller." The parties to the transaction were jointly interested in an enterprise which contemplated the manufacture and sale of umbrella tubes. This fact has no importance however, except as explaining the reference to the source from which the amount advanced by Keller was to be returned. It may be added that the enterprise wholly failed. The learned chancellor found that the money advanced to Cohen was used by him for his personal wants, and not for the business of manufacturing umbrella tubes, and that it became a debt due from Cohen to Keller. The amount so advanced was actually $2,000, and for this Cohen gave Keller two notes, each for $1,000 payable five years thereafter. Upon maturity of the notes suit was brought by Keller for their recovery. Cohen defended on the ground that under the contract the money was to be repaid Keller only out of the profits derived from the manufacture and sale of umbrella tubes, and that no profits had ever been received. A verdict was directed for the defendant on the ground that the evidence showing that the notes were to be paid out of a special fund, viz, profits, and it appearing that no profits had been made, plaintiff was not entitled to a personal judgment against Cohen. An appeal (224 Pa. 434) resulted in an affirmance of the judgment.

This then being the situation, Keller holding the two notes of Cohen which had been adjudged unenforceable against Cohen as personal obligations, and Cohen's insurance policy as collateral security as well, Cohen filed his bill praying that Keller be required to surrender up the notes and reassign the insurance policy. The contention was confined to the insurance policy. In support of appellant's contention it is urged, first, that the written proposition from Keller with reference to the money to be advanced by him, contemplated an assignment of the insurance policy as collateral to secure to Keller the transfer by Cohen of whatever profits might be received up to the amount of the notes, and as well the assignment of Cohen's interest in the patent; and, second, that the whole matter is now res judicata. It may be an ingenious but certainly is not a natural construction of the contract that is here contended for. The letter which is the basis of the contract relates to two distinct subjects, one, to the terms on which Keller proposed to provide funds wherewith to build a complete set of machines; the other, to the terms on which he was willing to make the advance to Cohen. It is in connection with the latter that the transfer of the insurance policy is introduced in the letter, and as so written the letter affords no semblance of authority for such transposition of terms as is here attempted. For the transfer of twenty per cent. of Cohen's interest in the concern in which the parties were interested, no security was necessary, since Keller's obligation to provide funds for the building of a set of machines could begin only upon such transfer being made. The transfer of the insurance policy was to be coincident with the advancement of the money to Cohen; but this transfer was to secure the repayment of the money at the expiration of five years. Between the assignment of Cohen's interest in the concern and the transfer of the insurance there is no discoverable relation. This was the view of

the learned chancellor, and he very properly held that while the notes given by Cohen were uncollectible by reason of the failure of the funds out of which their repayment was to be made, yet they evidenced a loan which remained unpaid, and the insurance policy having been assigned as collateral to that loan, Cohen was entitled to its return only upon payment of the loan. The case falls within the ruling of the court in Hartranft's Estate, 153 Pa. 530, where it was held that though the debt be barred by the statute of limitations the debtor is in no position to demand the return of the collateral securities pledged to the creditor until actual payment has been made. Here, as in that case, the creditor was barred as to right of action against his debtor, not by statute of limitations however, but because of the successful defense made by the debtor in the suit against him. The judgment there was not that the $2,000 was not owing the plaintiff, but that the conditions on which the money was to be paid had not occurred. The plaintiff had advanced the money to the defendant as a loan; it had never been repaid, and therefore the debt was not extinguished but remained as originally contracted, unenforceable at law, but for which the creditor held as his security the insurance policy. We know of no rule or policy of law that would require him to surrender it and thus defeat the very purpose for which it was transferred.

It is equally clear that appellee's right to retain the policy was not adjudicated in the proceeding at law for recovery of defendant's notes. The judgment there of course was conclusive, not only as to matters directly litigated, but conclusive as well as to any grounds of recovery and defense that might have been presented and decided. Long v. Lebanon Nat. Bank, 211 Pa. 165. Nothing with respect to the insurance policy was involved in that case, and it is impossible to see how the pledge of this collateral could have been made a ground either of recovery or defense in that action. It was

·wholly outside the case then being tried. We find no merit in any of the assignments of error. They are accordingly dismissed and the decree is affirmed.